The Bill states, that in 183-, the complainant contracted to purchase of one James Harrison, a tract of land, called the Keith Tract, containing two hundred and sixty-eight acres, at the price of $650, to he paid at a future day, and that Isaiah Neely and Thomas Williamson were his securities for the payment of the money. To indemnify them against this liability, Harrison, with the consent of complainant, conveyed the land to Neely, who agreed to convey it to complainant on his paying the money. That complainant was indebted to defendant, in the sum of about $137, on a judgment, and in about $40 on a note; and an agreement was entered into between them, that defendant should advance to Neely $575, the balance due on account of purchase of land, and that Neely should convey the land to him, and that complainant should retain the titles as a security for the re-imbursement of that sum, and for the sum due him by the defendant on the judgment and note; and that he should convey the land to complainant on the payment of these sums. In 183 — , the complainant contracted to purchase another tract of land, from one P. D. Cooke, called the Cooke Tract, containing seventy-three acres, at the price of $219, of which he paid $40. And John Kennedy and Henry Kennedy were his securities for the balance. To make them secure, Cooke, with the assent of the complainant, conveyed the land to John Kennedy, under an agreement that he should convey to complainant on the payment of the money. Immediately after, an execution, at the suit of a stranger, against complainant, was levied on this tract-And at the sale by the Sheriff, defendant became the pur-. *3 chaser, at one dollar. That defendant proposed to complainant, that he would pay the balance, of about $80, due by complainant on this contract, and if he would consent that Kennedy should convey the land to him as a security for the reimbursement of the money, to convey the land to complainant on his paying the same. The negotiations between the parties ended in a written agreement, on which the case mainly depends. And as it will be better understood, I shall copy it literally. It is as follows:
“ This instrument of writing, between David Aiken and James Walling, sheweth, that David Aiken does agree to give to James Walling the exclusive privilege of cultivating and tilling, for his own special benefit, two parcels or tracts of land, in connexion with each other. One containing 215 acres, formerly called the Keith Tract. The other containing 73 acres, adjoining P. D. Cooke. That the said James Walling is to have the free use of said land, upon these terms, viz: — That he is to pay David Aiken the rent of said land. It being the interest on the within specified amount, annually, as will appear by the titles of the said land. In case he does not pay to the said David Aiken, the whole amount of the original cost, which is $875, one half payable on the 1st January 1837, the other half, on the 1st January 1838. And in all cases, James Walling is not to call upon any man or company of men to assist him in the payment of said land. But unless he is able, by his own exertions, to comply with the above requisitions, that from and after the 1st of January 1838, the land shall be considered the property of the said David Aiken, free from all incumbrances on the part of James Walling; and should the said James Walling, by his own exertions, be enabled to pay the amount respectively due for said lands, as is herein specified, that he, the said James Walling, shall have the free use and exercise of said parcels of land, for the sole and special benefit of him and his heirs, from and after the 1st day of January 1838, free from all incumbrances on the part of said David Aiken; but in case the said James Walling, at the expiration of the above specified time, shall still be due to the said David Aiken any amount of money, he *4 shall be required to relinquish the said land, in conformity with the foregoing requisitions. We do both place our hands and seals, this 8th July, 1835.” Signed by the parties, and attested by J. D. Aiken.
The complainant further states in his Bill, that defendant has failed to pay the balance due on his contract for the purchase of the Cooke Tract of land, and that he has been compelled to pay it; that he tendered and offered to pay the defendant the sums due him on the foregoing contract, at the times therein specified, viz:— $575 on the-day of December, 1836, and $875 on the 1st January, 1838, and demanded titles.to the said land, but that defendant refused to accept the money or make the title. And that the said lands are worth $2000, and that defendant has commenced an action at law, to recover the said lands of complainant.
The prayer of the Bill is, that defendant may be decreed to convey the lands to complainant, and restrained from proceeding in the action at law to recover the said lands.
The defendant, in his answer, admits that the complainant was indebted to him in the sums stated in the Bill, and states that he was also indebted to him a considerable amount on other accounts. He denies that he ever proposed to the complainant to pay the balance due by him on account of his purchase of the Keith Tract of land, and to take titles as a security for the reimbursement, but states, that sometime early in 1834, complainant stated to him the contract between himself and Neely, and that the time for the payment had or would elapse in a short time if the money was not paid, and that Neely would keep the land if it was not. And advised defendant to pay the money and take the titles, adding that he had already paid a part of the money. That in an interview between Neely, complainant and himself, it was agreed that he should pay the balance due by complainant on account of that purchase, on the terms stated. And in pursuance thereof, on the 19th of March 1834, they entered into a written agreement, by which Neely agreed to convey the land to defendant. And he gave his note payable one day after date, for $575, the balance due by complainant. And that Neely, on the 5th of May following, made a deed *5 to him for the land, without any condition or qualification. And he denies that before that time there was any understanding or agreement between him and complainant, that he should have the right to redeem the land. On the contrary, that complainant continued to reside on the land as his tenant. He denies also, that he ever made any proposition to complainant, to purchase the Cooke tract of land, but that complainant proposed to him to let him have it in payment of what he was indebted to him. And stated that he had no doubt that Kennedy, in whom the title was, would convey it to him on his request. That complainant was then indebted to him in about $300. And was otherwise, apparently, insolvent. And therefore, he consented to take it. And Kennedy, in pursuance of this agreement, conveyed the land to him, on his entering into an agreement to indemnify him against his liability on the note given by complainant for the purchase money, for which Kennedy was surety. That he, defendant, was to allow complainant, on settlement, the price he had given, and a compensation for his improvement, which together were estimated at three hundred dollars.
That on the 8th of July, 1835, they came to a settlement of their accounts, and after crediting complainant with $300, the price of the land and improvements, remained in his debt $17,27. He admits that at the time Kennedy conveyed the land to him, and perhaps before, he agreed with complainant to give him an opportunity of redeeming the land, and believes that it was limited to twelve months; but he denies any recollection of any such verbal agreement with regard to the Keith Tract, but admits, that on the importunity of complainant, he consented to put them both on the same footing, when he was about to enter into the written contract above set forth. That under these circumstances, the said agreement in writing, alluded to in complainant’s bill, was executed, and a certain covenant introduced into the same, so as to put it out of the power of complainant to continue further his fraudulent speculations, with respect to the said tracts of land. He stated, that at the time the written agreement was entered into, complainant gave him his note for $79 72, which was made up of $61 25 *6 for the rent of the land, and of a balance which complainant owed him, after deducting the price of the Cooke Tract of land. He admits that he bought the Cooke tract of land at the Sheriff’s sale, at the price stated in the bill, supposing it might be some security for the debt which complainant owed him. But never set up any title under it. He denies that he was under any obligation to the complainant, to pay the balance which he owed on account of the purchase of the Cooke tract of land, but that his agreement was with Kennedy, to indemnify him. Defendant admits, that in the latter part of December, 1836, complainant told him he was ready to pay him, alluding, as he supposed, to the payment of the debt due him by the agreement. To which defendant replied, you cannot pay me according to the instrument of writing between us. Defendant took something from his pocket, and said, here is the money, but made no tender of money, nor did he shew any, and went away. He admits, that again on the 1st January 1838, complainant called on him, saying he wished to settle with him, to which defendant answered, here is my account ready made out, pay me the account and the prices I gave for the two tracts of land, agreeable to our written agreement, and I will sign you a title to them in a minute. After examining the account, complainant laid it down and said, here is the money for the land, or here is so much money, and handed a sealed bag of money to John Peay and Edward Means, to count. And they commenced counting it, but were interrupted, and did not conclude the counting, and complainant possessed himself of it. This was in the morning, and in the evening of the same day, the complainant again said to defendant, here is your money for the land, holding the bag in his hand; when a “conversation similar to that held in the morning, ensued between them. Defendant admits, that he would not have received the money, unless the complainant had paid him, not only what he had paid for the land, but all other demands against him, and he insists that he was bound to do this, by the terms of the agreement, and in consequence of his failing to do this, he has forfeited all claims to redeem the land. He admits that he has brought an action at law, to *7 recover the lands from the complainant. And insists on his right to prosecute it. He admits also, that the lands have appreciated in price, and are worth more than what he gave for them, hut of themselves are not so valuable as represented in the bill — that he had been offered $8 per acre, for this and other adjoining lands; but this, standing alone, would not be worth so much.
I have been thus particular in presenting the allegations of the bill, and the admissions and negations of the answer, because a good deal of personal feeling and interest were exhibited at the trial. But it is obvious, that many of them are mere matters of excitement, having little to do with the merits of the case. The negotiations between the parties were consummated by the written agreement, and their rights must depend on its legal effect. What that is, and the fact of the tender of the money by complainant, constitutes the principal subject of inquiry. Before entering on these inquiries, it will be necessary to dispose of another matter, which, although it enters into the construction of the contract, and seems to have constituted a leading motive with the defendant throughout the transaction, was not seriously insisted on by his council. The agreement contains a stipulation, that complainant shall not call upon any man or company of men to assist him in the payment of the said land; but unless he is able to do so by his own exertions, the land should become defendant’s, absolutely; and it is obviously this to which defendant alludes in his answer, when he says a certain covenant was introduced into the agreement, to put it out of the power of complainant to continue his fraudulent practices with respect to the said tracts of land; and it was to this, also, he must have alluded, when in his answer he states that he said to complainant on the tender of the money in December, 1836, you can’t pay me the money according to the instrument of writing between us; and when, according to the evidence, he offered to accept the rent, but refused to receive the principal, for complainant had borrowed the money from Col. Woodward. This agreement contains another peculiarity; it provides, also, that if at the expiration of the time limited for the payment of the money, complain *8 ant should he indebted to the defendant in any amount, he shall be required to relinquish said land. Wow, according to the literal interpretation of these stipulations, defendant was not bound to accept the money, unless complainant raised it by his own personal skill or labor, and if one dollar remained due at the expiration of the time limited for the payment, the land belonged to the defendant; and that seems to have been the construction put upon it by him. The complainant possessed neither professional skill nor mechanical art, and according to defendant’s own shewing, was insolvent. His only income was derived from planting, carried on principally, if not entirely, by his own labor, and no one knew better than the defendant, that it was entirely impossible for him to subsist his family and raise so large a sum, by these means, within the time limited. He never intended that complainant should pay the money ; and this may serve to explain the difficulties which he threw in the way when the money was tendered. The proof of the tender of the sum due on the first instalment before it became due, was uncontroverted. Mr. Gamble testified that on the last of December, 1836, he counted for complainant a bundle of bank bills, amounting to about $590, which he offered to defendant, saying, there is the money for the land. Defendant said he would receive the rent, but not the principal, as complainant had failed to comply w'ith his contract. Mr. Wylie, the Sheriff, testified that defendant told him that complainant had tendered him some money, but that he did not know how much, and requested witness to endeavor to induce complainant to make the tender again, and he would take his rent out of it, and that witness might levy some executions which were in his office, against complainant, on the balance. On the 1st January, 1838, when the last instalment fell diie, the complainant exhibited a bag of specie, saying to defendant, I have come to settle with you, and here is the money for the land. Defendant replied, that if complainant would pay him all that he owed him, he was ready to make titles to the land, and requested him to count the money. He then exhibited against complainant an account amounting to $415 65, made up principally of the rents of these two and another tract of land called, the Warring *9 Tract, to which was added a few other items for costs paid, and one for a store account. John Peay and Edward Means were requested to count the money, which amounted to almost the principal sum due on the contract, and about the time they had finished it, Hugh Miller, one of the deputy Sheriffs, attempted to seize it under sundry executions against complainant, on which a small balance was due. He was prevented by Peay and Means, and complainant took possession of it. Mr. Wylie, the Sheriff, testified that he gave the executions to Miller, to levy on the money, in consequence of a message purporting to come from the defendant, requesting that he would do so. He was under the impression that the defendant’s son, James R. Aiken, delivered the message, and should still think so, if he had not denied it; and Abram Crossland stated that he was present when the message to Wylie was delivered by James R. Aiken; but James R. Aiken testified positively that he never delivered any such message. There may have been, and probably was, some mistake about the person who delivered the message. But I incline strongly to the conclusion that the message was sent by the defendant, and this is strengthened by the facts stated by the witness, Miller, “ that after he had attempted to levy on the money, defendant said to him that the best way was to get a ca, sa. against complainant, and that would compel him to give up the money.” In the afternoon of the same day, complainant again offered defendant the money, as he said, to rfor the land, and defendant refused to receive it, unless would pay the account including all that he owed him. Mr. Woodward had lent complainant the money in both instances.
In looking through all the circumstances of the case, I think it very apparent that the relation between the parties has every resemblance to that of mortgagor and mortgagee. The conveyances to defendant, although from strangers, were procured through the agency of complainant, upon the condition set forth in the agreement; this is conceded in the answer as the Cooke Tract, but defendant denies any recollection as to any such agreement as to the Keith Tract. The witness, Isaiah Neely, testified, however, that when he executed the deed to defendant for this *10 land, complainant stated to him, in the presence of the defendant, that he was indebted to defendant, and that he had agreed to take titles to the land, “ and give him a chance,” and defendant bowed his assent. And when it is taken into consideration that there is no assignable motive for such a contract with regard to one tract, and not the other, and that they are both embraced in the written contract, and put on the same footing, the strong presumption is, that defendant had forgotten the circumstances. As mortgagor, no one will dispute that complainant had the right to redeem,- even if condition had been broken. The right of a mortgagor to redeem is an equity, so that it cannot be provided against by agreement that chancery will not give relief; nor can the right of redemption be closed by any agreement, since this would be to let in all manner of extortion and usury. (2 Fonb. Eq. 260.) Let it be considered with reference to the letter of the contract. The first stipulation on the part of the complainant is, that he shall pay the rent annually, the measure of which is to be ascertained by the interest on the price fixed on the land, and no forfeiture is annexed to its non-fulfilment. Then follows the provision. In case he does not pay said David Aiken the amount of the original cost, which is $875, one half on the 1st. January, 1837, the other half the 1st. January, 1838, the land is to become the absolute property of the defendant. These conditions the complainant offered to perform, and there could be no forfeiture of the right to redeem according to the letter of the contract. As to the defendant’s right to insist on the payment of other debts due to him by complainant, as a condition of his executing titles to him of the lands, this question as between the mortgagor and mortgagee, seems to be involved in some difficulty; but from the best consideration I have been able to give it, (for the question was not urged,) the received rule now is, that on a bill filed by a mortgagor to redeem, he is bound to pay the mortgagee, not only the mortgage debt, but all others which he may owe him, whether by bond or simple contract. And the reason on which it proceeds is, that the legal title having been vested in the mortgagee, by breach of the condition, the mortgagor will not be permitted to redeem, until he has satisfied ail the mort *11 gagee’s equitable demands ; but that on a bill filed by a mortgagee to foreclose the equity of redemption, he can .only demand the money due on the mortgage ; the reasons for this dictinction are not readily perceived, but such appears to be the tenor of the authorities. (Fonb. Eq. 273-4. Baxter vs. Manning, 1 Wend. 244. Parefay vs. Plempay, Ibid, 28. Eq. Abr. 325. Anonymous, 2 Vern. 177. Coleman vs. Wench, 1 Pev. 776. Mont vs. Park, Atk. 53. Archer vs. Stratt, 2 Str. 1107.) Here the legal estate is in the defendant; it never was in the complainant; and in that the case differs from the ordinary case of a bill to redeem a mortgage. Now, if the parties be regarded as standing in the relation of mortgagor and mortgagee, the complainant was willing and ready to perform precisely what was stipulated in the contract, and therefore the principle which governs the case where the mortgagor files a bill to redeem, does not apply. The right to redeem after condition broken, as before stated, is founded in strict equity, and the Court will take care that ample justice is done to the mortgagee, but that so when the mortgagor has been ready and offered to perform his part of the contract. The defendant, however, assumes that there were no equities in the case, that the absolute and unconditional/property of the land was in himself, but admits that he entered into an agreement to convey them to the complainant on the payment of a stipulated sum of money. The complainant offered to do this at the time designated in the agreement, and we will enquire in vain for any principle or authority which would authorise him to superadd any other conditions. The interest, as before shewn, is the subject of an independent agreement in the form of rent, and the defendant acting upon it in 1838, distrained for the rent, and in an action of replevin brought by the complainant, recovered a verdict for the amount. The matter of interest does not, therefore, enter into the case. It is therefore ordered and decreed, that the complainant shall, within thirty days after notice of this decree, pay to the defendant the sum of eight hundred and seventy-five dollars. The defendant do thereupon make, execute and deliver to the ' complainant, good and sufficient titles in law, in a form to be prescribed by the commissioner, for the two tracts.of *12 land designated in the pleadings by the name of the Cooke and Keith tracts ; and that in default of complainant paying said sums of money to the defendant, in the time limited, that the commissioner, at the first or other convenient sale-day thereafter, after having given legal notice of the same, sell the said tracts of land for cash, and after paying the defendant the said sum of $875, he pay the balance to the complainant. That the injunction to restrain the defendant from proceeding in the action at law, against complainant, to recover the land, be perpetual; and that defendant pay the costs in this suit, and the suit at law.
The defendant moved to reverse the decree of the Circuit Court, upon the following grounds:
1st. Because the written contract entered into between complainant and defendant, on the 8th July,T835, was, under all the circumstances connected with it, a fair and valid contract in all its provisions, and the complainant ought to have been compelled to shew that he had strictly and literally performed the same on his part, in every particular, before he could entitle himself to the relief prayed for in his bill.
2d. Because the said agreement is not at all in the nature of a mortgage or defeasance, as complainant, at the time said agreement was executed, had neither legal nor equitable title to the lands referred to in said agreement, the whole transaction being a voluntary and gratuitous act on the part of the- defendant, and without any consideration whatever. Complainant, therefore, was not entitled to the lands, or to a specific performance, without strictly performing the conditions and terms imposed by defendant in said agreement.
3d. Because the defendant, at any rate, was not bound, according to the terms of said agreement, to make titles to said lands until the complainant either paid to him, or offered to pay to him, the whole of the demands which he had against him on the 1st January, 1838. And the tender of $875, alleged to have been made on said day, was wholly insufficient for that purpose, as the demands of defendant against complainant on said day, amounted to upwards of twelve hundred dollars.